Good morning Councillor. May it please the court, Shanlyn Park on behalf of Zachariah Dodge. As this court has stated in both the Cantrell and Mohamed decisions a sentence cannot be affirmed for overall reasonableness if the sentence was a result of an incorrect application of the guidelines. Okay, let's just jump right to that from the standpoint. So what's your position as to what the correct guidelines were? Our position is that the judge properly calculated Mr. Dodge's guideline base offense level to be that of nine. And then when he reduced it for the two levels of acceptance of responsibility, the accurate range was to base offense, the total offense level of seven. So what's the month's range? Twelve to eighteen months. All right, so, well, then I'm not exactly understanding it. So you're saying the twelve to eighteen is the correct calculation? It is the correct calculation. In order for the judge to have gotten to that calculation, the way the interference of the flight crew sentencing guideline structure is under 2A5.2, it requires the judge to make a finding as to whether a defendant's actions rose to the level of intentional, and that would have it start at a base offense level of 30, reckless, having it start at a base offense level of 18, or all other conduct starting at a base offense level of nine. Well, here's my problem. If I think that the government said something that the range should have been, what, 41 to something? The government makes that argument based upon a finding that the district court should have determined that Mr. Dodge's conduct aboard the aircraft was reckless. The district, the government at sentencing also agreed that the proper base offense level was nine. They never objected when the court. Well, I know, but I'm talking about the arguments here. And let's say if we say, okay, if the court calculated the sentence range wrong and that that's error and it needs to go back in order for the court to resentence, if, but we're saying it was wrong because it was 41 to another number, then why, but then we're just going to go back and then you're going to argue, no, it was 12 to 18, it wasn't really wrong. Your Honor, what the calculation shows is that the district court at sentencing made a contradictory finding when it imposed the higher sentence. I guess I'm telling you you can't have it both ways. If the sentence range was 12 to 18 and that was correct, then we have to go through the whole evaluation. If the sentence range was wrong and the court was looking at it wrong and it was 41 to another number, then if we say that that's error and it needs to go back with the court considering the proper range, then that's one thing. But if the correct range is 12 to 18, then we're looking at it for the notice, if there was a notice issue, and we're looking at it as to the reasonableness, if the range was correctly calculated. The contradiction in regards to how the calculation occurred can be looked at, whether the guidelines were properly calculated as our position, but it also can be looked at as a basis for finding the sentence to be unreasonable. But our precedents are different in the two cases. If the guideline calculation was wrong from the outset, even though it's higher than what you urged it was, but if it really should have been 41 to 51, then at least arguably under Cantrell, the first step of Cantrell, we would have to vacate and remand for resentencing without ever getting to the issue of reasonableness, because we don't really know. Although the government might argue it's harmless, the judge would have done the same thing. We don't have any precedent, I don't think, that said that when there's a guidelines calculation error, you can make that type of harmlessness determination. Second, we don't really know here what the judge would have done. Maybe if the guideline range had been higher, he wouldn't have felt the need to depart and wouldn't have gone as far as he did. So, I mean, are you sure you don't want to accept the government's – I think it was the government's position that the range was improperly calculated, although they argue it doesn't matter? I mean, are – We believe that the judge improperly calculated the guidelines, and that contradiction was improper when it imposed the higher sentence. No, I don't think that's what – you don't – you still think the 12 to 18 is correct, which is what the judge used. So – but you're making other arguments. But, see, you want to go back and say, okay, it's 12 to 18, but the government's saying it's really 41 to 51. If we were to say, okay, it should have been 41 to 51, then you go back on 41 to 51. You don't go back on 12 – you can't – you know, you want it all ways. Well, in order for the judge to have made that base-offense-level finding of 9, it had to determine that all of the facts that were in the record in that pre-sentence report did not make a finding of reckless. Nevertheless, the judge then, minutes later, contradicted himself and went against that complete – that finding and imposed a higher sentence. The government never argued – Those are other arguments why you're saying the sentence is wrong, but you're saying the 12 to 18 is correct. Yes. We believe that the 12 to 18 months is correct in this case. But 12 – but 41 to 51 would be correct if Mr. Dodge, with his drinking and his cornering of the stewardess and everything, were viewed as acting recklessly. Correct? If there was a finding that Mr. Dodge acted recklessly, then the base-offense level would have been higher. It would have been at a level 18. That's correct. Yeah. So your 12 – your 12 to 18 or your lower guideline range argument is premised on the idea that the judge's – the finding the judge made about the guideline range is like an implied finding of no recklessness, which is later contradicted by the other stuff he said.  The court could not have made the finding of no recklessness. Let's just – if we just cut to the heart of it, it seems that the judge did think Dodge was acting recklessly by cornering the stewardess and interfering with duties of the stewardess or others on the airplane. I could be wrong in that, but that's – the way it's looking to me is that the judge made a mistake in calculating the guidelines, and we should return it to the judge to make a sentencing based on the proper guideline range. But go ahead with your argument. This court has looked at the issue of reasonable – or recklessness in other cases and has found recklessness on the basis – well, in Nagani, this court looked at whether the defendant's actions arose to the level of recklessness. In Nagani, the defendant was smoking in the bathroom. He set off a fire alarm. He didn't respond to the flight attendants when they were knocking on the bathroom asking him to come out. He lied to the flight attendants about smoking, and then after he got into this altercation with the flight attendants, he threatened to kill Americans. That – those facts established recklessness. Dodge did none of that in this case. He got into an altercation with a flight attendant about drinking, and which led to him spitting in her face. But after the altercation was over, he went back to his seat. He complied with all of the instructions of the flight attendant. He didn't disrupt the travel route, and he never made any statements threatening anybody. Well, he had – he involved three flight attendants in the entire process. He was drunk, and he also involved, was it the captain or the assistant captain, in terms of they had to – I'm not sure if it was by phone or how they communicated, tell him he's under arrest or, you know, tell him he's going to be arrested if he doesn't. So, you know, he didn't – he involved four crew members in the process. But at no time did he physically touch any of the flight attendants. At no time did he threaten any of the flight attendants. At no time was the travel route of the flight ever considered to be altered. And when he was asked to sit down in his seat, he eventually complied, and that was the end of the situation. Therefore, it is our position that Mr. Dodge's conduct does not amount to a reckless finding at all, given when you compare it to the facts in the GANI. And even if this Court were to look at Mohamed for guidance, in Mohamed, that defendant received a 60-month sentence, 10 months less than what Mr. Dodge received. And in Mohamed, that defendant made a false threat regarding an attempt to destroy buildings, shopping malls. Well, in fairness, Mr. Dodge isn't being sentenced in the abstract, though, either. He has a few – he – there were other things that the Court considered in that he didn't – he had had prior contact with the Court where he had not been remediated. He continued to, I think, drink and use drugs from when he got off the plane until he was sentenced. So, you know, I mean, we can look at the other things. And those, you know, they can be what they are, but I think that we also have to consider that each defendant is – has their own operative set of facts, but also their own operative set of facts relative to who they are in terms of status. But if you're looking at the issue of recklessness and you have to – those facts you can compare. The facts in Mohamed, the facts in Aghani are substantially different than the facts in Dodge. And in those cases, this Court determined that those actions were reckless. Mr. Dodge's conduct does just not amount to those defendants in Aghani and Mohamed. And both of those defendants received lesser sentences than he had by substantial amounts. I think there's some force to your argument that the facts in those cases are different and in some ways more extreme. But if you look at what the district judge said in imposing the sentence that he did, with what he thought was the departure to, you know, like roughly six years from what he thought was a 12-15 or 12-8, isn't it clear that his reasoning indicated that he thought that interfering with a stewardess on an airplane is a reckless act? Cornering her. I mean, yes, he didn't hit her, but, you know, cornering her, blocking her movement, being drunk on an airplane that he thinks that there – doesn't his other reasoning indicate it like a view of recklessness here? But his other reasoning is clearly contrary to the initial findings that he made at the beginning of the sentencing. No, I realize your argument on that, but if we just think, okay, let's assume he was asleep when he made his initial determination, and that was just off base, and that you can't draw any inference from his sentencing guidelines conclusion, and you just look at everything he said in the transcript in the sentencing and everything else, wouldn't it be a fair reading of that, that he's viewing the behavior of the appellant as reckless? I don't believe that there are any facts that the Court relied upon that do demonstrate that Mr. Dodge's conduct was reckless. As I articulated earlier – What about that he endangered the whole aircraft? Didn't he say something like that? The judge said that, but whether – Well, okay, but can't we infer from that, if you endangered the whole aircraft, I think you can make an inference that the judge thought that it was reckless. But at no time – there's no evidence in the record that supports that finding. At no time did the flight attendant say that she felt that she was endangered. She said she felt that she was belittled, that his actions were rude and disrespectful. But at no time, either in her oral or written statement, did she say that she ever feared for her life. Okay, well, I think we're re-arguing certain things. Did any of the panel members have any additional questions? No. What is the – this is just sort of a practical question. She gets a sentence here, it's close to seven years, right? That's correct. And, of course, on the issue of reasonableness, once you know what the sentencing range is, our precedents are kind of on hold in light of the Enbank-Cardi-Zavala thing. At least some precedents are on hold. But is there any precedent on the general issue of reasonableness that would guide, assuming you were correct in your guidelines calculation, counsel, and assuming that the judge can't say it's just reckless to interfere with a flight attendant because it jeopardizes an airplane. So assuming that we accepted your guidelines calculation, is there any precedent on reasonableness that would say that the judge can or can't make a departure of this level? Because now we're living in the Booker world. So whatever the guidelines are, there's then the second step of the judge does what the judge thinks is reasonable. I think given this record, given that there's a clear contradiction by the judge in what his initial findings were, given that there is a waiver by the government for any argument as far as reckless is concerned, that this Court can reverse the sentence and remand based upon those findings. Okay. Thank you. All right. Thank you. Good morning. May it please the Court. Beverly Wissamashima on behalf of the United States, the appellee in this case. Keep your voice up if you would. Thank you. In this case, it's our position that Judge Ezra imposed a reasonable sentence under the circumstances of this case, and he made very explicit both oral and written findings setting forth the factors under 353A with respect to that. He took a lot of time in the oral sentencing, ran about ten pages of the transcript enumerating both the serious nature of this offense as well as the characteristics of the defendant. And ultimately, his sentence was very close to that which this Court in Mohammed had awarded in a situation where the criminal history of the defendant was a lot less. In Mohammed, of course, the defendant had a criminal history of one, and although this Court noted that it did not reflect some of the other criminal nature of the defendant, that was one of the reasons for imposing a sentence outside of the guidelines. In this case, Judge Ezra focused on and relied upon the recidivism and the actions of this defendant throughout his criminal history, including right before the sentencing. Well, okay, but on the guideline range issue, that if the Court calculated the guidelines wrong, and under the present sentencing in terms of looking at the guidelines and then going to look to the other 3553 factors, is that subject to a harmless error? You know, now I'm hearing the appellant saying the guidelines aren't calculated wrong. You're saying that they are calculated wrong? Well, Your Honor, the government did not object below, as the Court knows. Right. I think that the judge and probation also did not note that, I mean, did not select that guideline either, although I think the record and the judge, Ezra, implicitly in his findings, finds that it was a reckless endangerment. I mean, there's no clear statement that when you're up in an airplane and the crew gets diverted from their normal duties and or the pilot, copilot, has to leave their post in order to take care of a matter, it's very dangerous, and I'm citing to the excerpt of record at 71, he talks about this environment being a lethal environment, potential for a lot of danger. So I think he did make a finding, but the government did not object. And it really doesn't matter because the end result was that the Court properly applied the 353A factors, and his sentence ultimately did fit the characteristics of this particular defendant. gg Is there any problem with the notice that the defendant got? In other words, a defendant goes to court with this PSR and the calculation of the guideline range and ends up with 70 months. What kind of notice did the defendant have that he was facing that kind of a sentence?  The defendant had a three-week departure, about a week before the sentencing, and in that motion they listed three grounds. First, the defendant's pretrial violations, and that would necessarily subsume his drug addiction and his drug history. I mean, those were the violations at issue, and that was something Judge Ezra did use as a basis to impose his sentence. Secondly, they also noted that it was based on the three major grounds were his conduct on pretrial release, the violations, his likelihood of recidivism. Again, his criminal history was something that the judge emphasized. His continual contempt and disregard of previous court orders up until two weeks before the sentencing. He was violating. He was using marijuana. This was even after the probation had issued, the court had issued a petition for revocation. He used again, failed to submit to drug testing, and again tested positive. Just two weeks. That gives him notice of that's what the government thinks. But what notice did he have of what the court did? In other words, the court says, you endangered the aircraft. I'm going to six years. So what notice did he have before sentencing to prepare for that eventuality? Well, Your Honor, I think the rule 32H talks about only notice that's not already given by the government or in the presentence report. And moreover, that claim is subject to plain error. The defense never raised that below. And therefore, it's our position that even though it may be error, that it doesn't rise to the level where it affected the fairness or integrity of the proceedings. Because here, they had a full week to know that there was going to be an argument that it would be going upward. And what is it that the defense could have done in terms of, I mean, defense counsel argued fully and was able to address the motion? They might have been able to point out that the guideline range was calculated incorrectly. Now, the defense would not want to say, look, the 12 to 18 months is incorrect. It should have been higher. But the problem is certainly in the light of hindsight that maybe if Judge Ezra had known that the guideline range was as high as 51 months, he wouldn't have felt necessary to go to 70. I think under the circumstances of the case, that – I mean, the Court, as it said in the record at Excerpt of Record 75, that he selected the time that the court selected the 70-month sentence for serious and legitimate reasons. I mean, he – he honed in on that particular time period. He didn't select the sentence simply, quote, by putting a pin on it, the wall, and looking at a term of imprisonment. I didn't feel – I did not feel that in my long experience on the bench, given the recidivism rate of this defendant, the fact that he totally and absolutely has ignored and not abided by any court orders imposed. But I don't think that goes to the question – that explains what Judge Ezra did. But it doesn't go to the point of what notice did the defendant have that this was a sentence that he was potentially exposed to. And we don't know what the defendant might have done had he and his lawyer known what was going to go on, or had some idea generally what was going to go on. Okay. I know Judge Gould, you had a question. Go ahead. I'd like to get the government's view on – just going back to our simple precedent in Cantrell. I'm pretty sure in Cantrell that our opinion, which I wrote, so I have some recollection of it, but I was pretty sure that it said if there's a guidelines range error, that that's – we stop there. We don't go on to assess reasonableness. And I thought that we've never had a precedent within the circuit after Cantrell that's ever said that if there's a guidelines range miscalculation, that the court can say it's harmless and it doesn't matter because we think the same result would have been reached anyway. So am I right in both of my recollections, if you know? Or if I'm wrong, if there's a – if Cantrell doesn't say what I said, let me know. And if there is a precedent that finds harmless error after a guidelines miscalculation, post-Cantrell, let me know. Your Honor, I'm not aware of any, and I would not disagree with the court's recollection of its decision. Okay. Well, then let's just keep it simple. Why shouldn't we just send it back to the district judge, say you made a guidelines error calculation, although you departed or you gave great weight to the dangerousness with the aircraft, you didn't recognize that that's already taken into account in a correct guidelines calculation. So we really don't know what the judge would have done if he'd seen that, viewing Dodge as reckless, he'd get to 41 to 51 months. He might still depart upward from that. But how do we know? Well, Your Honor, I don't have a good answer to that. I would suggest perhaps this is a case where the court can find that it is harmless, that the result would have been the same, and that because the court in this case made a very careful 3553A analysis, both orally and written, and based on the facts that the sentence probably would not have been different, and therefore the court should not remand the case. But I don't have a good answer. The district judge certainly made a conscientious and thorough discussion. But if he missed the basic point that the guidelines range itself would go up based on actions that create a risk for the aircraft, it seems like it's hard to know what he would have done if he was aware of that, at least with our system, that it ought to go back to him perhaps to assess in light of that. Of course, the government, I guess, would still be free to argue that he should go above that range. By the way, the government didn't argue for the sentence at the length the judge gave it, right? That's correct. The government's motion answer is 60 months. You wanted five years, and he basically did six years. Okay, well, it's an interesting case, and it raises a few challenging issues. All right, thank you for your argument. Unless if both sides have used their time, but if either of the panel members have any questions that they'd like to ask the appellant, I can extend that. Do either of you have any additional questions? No. I don't. All right, thank you. Then the matter stands submitted. United States of America v. Jacobo Lomeli-Avalos, case number 06-10191, is submitted on the briefs as of this date. Mary Jane Paccioni v. Unum Life Insurance Company of America, case number 04-16510, that matter is submitted on the briefs as of this date. The next matter on calendar where counsel is present, Ileana Volenskaya v. Epicentric, Inc., Health and Welfare Plan, case number 04-17484.
judges: T.G. Nelson, Gould, Callahan